CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
3/6/2020

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| **MAXWELL B. McCULLOUGH,** Administrator of the Estate of **FRANCES FITE, Deceased,** | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| **BESTAR, INC.** | ) ) |
| Serve: BESTAR Inc. <br> 4220 Villeneuve, <br> Lac-Mégantic (Qc) G6B 2C3 | ) ) ) ) ) |
| *Defendant.* | ) ) |

Case No. 5:20-cv-00019
JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW the Plaintiff, Maxwell B. McCullough, Administrator of the Estate of Frances Fite, Deceased, by counsel, and alleges as follows for his Complaint against Defendant Bestar, Inc.

### Parties, Jurisdiction, and Venue

1.  Plaintiff Maxwell B. McCullough is a citizen of the State of Oklahoma. McCullough qualified as Administrator of the Estate of Frances Fite on March 27, 2019, in the Circuit Court for the City of Charlottesville, Virginia. At the time of her death, Ms. Fite was a citizen of Oklahoma.

2.  McCullough is the surviving spouse of Frances Fite.

3.  Defendant Bestar, Inc., is a Canadian corporation with its principle place of business in Quebec, Canada. Bestar is engaged in the business of, among other things, manufacturing and selling furniture to customers in the United States.

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

5.  This Court may exercise personal jurisdiction over Bestar because, among other things, Bestar purposefully availed itself of, and directed its commercial activity at, the Commonwealth of Virginia when it shipped the product in question directly to a purchaser in Virginia.

6.  Venue is proper in this Court because the Plaintiff's decedent was injured by the Defendant's product in Staunton, Virginia.

## Background Facts

7.  In May of 2018, Frances Fite and Maxwell McCullough were a married couple living in Oklahoma. They had retired to Oklahoma after living and working in the Northern Virginia / Washington D.C. area.

8.  They still returned to the Northern Virginia area regularly to visits friends and to play in an orchestra with which they had long been associated.

9.  In May of 2018, Fite and McCullough were traveling from Oklahoma to Northern Virginia to practice and play with their orchestra. They planned several stops along the way.

10. One of the planned stops was at the home of Susan Johnson, a friend and former colleague of Ms. Fite's. Ms. Johnson lived in Staunton, Virginia.

11. Ms. Fite and Mr. McCullough planned to spend at least one night at Ms. Johnson's house.

12. In late 2016, Ms. Johnson had purchased a pull-down wallbed to use when she had guests.

13. The pull-down bed purchased by Ms. Johnson was a "Nebula Queen Wallbed" manufactured by Defendant Bestar, Inc.

14. The Bestar bed is designed such that it can be stored in the "up" position, in which case it appears to be a cabinet standing up against a wall. The bed is then pulled down when it is needed.

15. In the "down" position, the metal bed frame and mattress are horizontal on the floor, while the heavy wooden cabinet frame remains vertical against the wall. This frame is designed to be affixed to the wall along the top.

16. The bed has pistons and/or springs near the hinges at the bottom that assist the user in picking the frame and mattress up to return the bed to the "up" position. Thus, when in the "down" position, the mechanism is exerting force that is trying to close the hinges by pulling the mattress and frame up from horizontal to vertical, and pulling the cabinet frame down from vertical to horizontal.

17. If the bed is not properly and securely affixed to the wall, it poses a great danger to users and others who may be in the room because of the possibility of the heavy structure falling forward and crushing someone. This is especially so when the bed is in the down position because the engaged piston/spring mechanism essentially turns the product into a set mousetrap.

18. Ms. Johnson had purchased the Bestar bed through the Amazon website.

19. Bestar shipped the product directly from its facility in Quebec to Ms. Johnson's residence.

20. The product was shipped unassembled in a number of large boxes. The boxes contained instructions and hardware for assembly.

21. Bestar was aware that its products were being purchased and assembled by ordinary consumers and other non-professionals, and explicitly marketed its products as being suitable for purchase and assembly by ordinary consumers.

22. The boxes contained all of the materials and hardware necessary to assemble the bed with the exception of the hardware necessary to affix the bed to the wall.

23. With regard to mounting the assembly to the wall, Bestar merely instructed the purchaser to mount the bed into the studs of the wall, while leaving the purchaser on his or her own to determine how to do that and what type of mounting hardware to use.

24. The individual who installed the Bestar bed in Ms. Johnson's house failed to mount the bed into the wall studs because he was not provided stud screws with the assembly hardware. Instead, he mounted the bed into the drywall using bolts and drywall anchors.

25. Had he been provided with stud screws and detailed instructions on how to locate studs, how to mount the bed into studs, etc., he would have mounted the bed into the studs of Ms. Johnson's house.

26. Unlike Bestar, the overwhelming majority of wallbed manufacturers include all hardware and instruction necessary mount the bed into the studs.

27. This common industry practice greatly mitigates the risk that a consumer or installer will use incorrect hardware or methods in mounting the bed to the wall.

28. In the evening of May 15, 2018, Ms. Fite and Mr. McCullough intended to sleep on the Bestar bed in Ms. Johnson's house. They had prepared for bed and were lying in bed reading.

29. Mr. McCullough got out of the bed to turn off the lights so they could go to sleep.

30. As he was walking toward the light switch, he heard a loud crash. He turned around to find that the heavy, wooden cabinet frame had pulled out of the drywall and snapped down onto Ms. Fite.

31. A wooden cross-member was positioned along the back of the cabinet frame such that, when it closed, the wooden cross member came down directly onto Ms. Fite's head and neck.

32. It is a known and foreseeable risk in the wallbed industry that wallbeds may collapse on users and that, if they do, cross-members will impact the user.

33. The force of the wooden frame and cross member slamming down onto her head and neck resulted in Ms. Fite's neck being broken and spinal cord severed.

34. As a result of this incident, Ms. Fite endured a prolonged hospitalization with numerous complications and procedures. She ultimately succumbed to her injuries, passing away on July 3, 2018.

## Count 1 - Negligence

35. All preceding allegations are incorporated herein by reference.

36. At all relevant times, Defendant Bestar owed the Plaintiff's Decedent the duty of reasonable care when it designed, manufactured, packaged, shipped, sold and/or distributed the subject wallbed.

37. Notwithstanding said duty, Defendant Bestar was negligent in designing, manufacturing, packaging, shipping, selling, and/or distributing the subject wallbed, which Defendant Bestar knew, or in the exercise of ordinary care should have known, was unsafe for its reasonably foreseeable uses.

38.     Defendant Bestar negligently failed to adequately notify, warn, and/or instruct purchasers, users, and/or others, including the Plaintiff's Decedent, of the danger of the subject wallbed during foreseeable uses.

39.     Defendant Bestar was negligent with regard to the design, manufacture, and sale of the subject wallbed in multiple respects, including but not limited to:

   a. failing to provide the appropriate mounting hardware for mounting the wallbed to the wall studs;

   b. failing to provide sufficient instructions regarding mounting the wallbed into wall studs, such as instruction on what type of hardware to use;

   c. designing the wallbed to include a heavy wooden cross-member directly at a user's head level;

   d. failing to provide for or instruct on attaching the wallbed to the wall in multiple locations as opposed to just along the top of the cabinet frame;

   e. failing to adequately warn of the dangers of the subject wallbed pulling away from the wall;

   f. failing to adequately explain and/or warn of the force exerted by the spring/piston mechanism and its ability to pull the cabinet frame away from the wall.

40.     Such negligence on the part of the Defendant Bestar was a direct and proximate cause of Ms. Fite's death.

### Count 2 – Claim for Breach of Implied Warranties

41.     Plaintiff incorporates herein by reference all preceding allegations, and as a separate and distinct cause of action alleges as follows:

42. Defendant Bestar at all times material hereto impliedly warranted to purchasers, users, consumers, industry and the public generally, including the Plaintiff's Decedent, that the subject wallbed it designed, manufactured, packaged, shipped, sold and/or distributed was reasonably fit and safe for its foreseeable uses.

43. Defendant Bestar breached its implied warranties of fitness and merchantability by defectively designing, manufacturing, packaging, shipping, selling and/or distributing the subject wallbed which was unreasonably dangerous for its foreseeable uses.

44. Defendant Bestar further breached its implied warranties of fitness and merchantability by failing to adequately warn and/or instruct users, purchasers, the public and others, including the Plaintiff's Decedent, concerning the dangerous characteristics and/or limitations of the subject wallbed when used in a reasonably foreseeable manner

45. Defendant Bestar further breached its implied warranties of fitness and merchantability by failing to take other reasonable measures to minimize or eliminate the hazard of the subject wallbed pulling away from the wall and crushing users under foreseeable circumstances, including but not limited to:

   a. failing to provide the appropriate mounting hardware for mounting the wallbed to the wall studs;

   b. failing to provide sufficient instructions regarding mounting the wallbed into wall studs, such as instruction on what type of hardware to use;

   c. designing the wallbed to include a heavy wooden cross-member directly at a user's head level;

   d. failing to provide for or instruct on attaching the wallbed to the wall in multiple locations as opposed to just along the top of the cabinet frame;

    e. failing to adequately warn of the dangers of the subject wallbed pulling away from the wall;

    f. failing to adequately explain and/or warn of the force exerted by the pistons and their ability to pull the cabinet frame away from the wall.

46. The unreasonably dangerous conditions existing in the subject wallbed remained generally in the same condition as when it left the Defendant's possession or control until the date of Plaintiff's Decedent's accident.

47. Defendant Bestar's breach of warranties as described above directly and proximately caused Ms. Fite's death.

## Claim for Wrongful Death

48. All preceding paragraphs are incorporated herein by reference and re pleaded as if set forth fully herein.

49. As a direct and proximate result of the Defendant's negligence and breach of warranties, Plaintiff's Decedent, Francis Fite, died on July 3, 2018, and her estate has incurred expenses for her care and treatment incident to the injury resulting in her death and for funeral and burial expenses.

50. Ms. Fite is survived by her husband, Maxwell McCullough, who is her statutory beneficiary as defined in Va. Code § 8.01-53.

51. As a direct and proximate result of Defendant's negligence and breach of warranties, decedent's beneficiary has suffered, and will suffer in the future, loss of services, protection, care and assistance provided by the decedent; and loss of society, companionship, comfort, guidance, kindly offices, and advice of the decedent.

WHEREFORE, the Plaintiffs, Maxwell McCullough, Administrator of the Estate of Francis Fite, by counsel, pray for judgment against Defendant Bestar, Inc. in an amount to be determined by a jury, with interest from May 15, 2018, and his costs in this behalf expended.

**TRIAL BY JURY IS DEMANDED.**

                                                MAXWELL McCULLOUGH,
Administrator of the Estate of
FRANCIS FITE, Deceased.

*By Counsel*

      /s/ E. Kyle McNew
E. Kyle McNew, Esq. (VSB No. 73210)
M. Bryan Slaughter, Esq. (VSB No. 41910
MICHIEHAMLETT PLLC
310 4th Street NE, 2nd Floor
PO Box 298
Charlottesville, VA 22903
(434) 951-7234
(434) 951-7254 (fax)
kmcnew@michiehamlett.com
bslaughter@michiehamlett.com

*Counsel for Plaintiff*